# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MathStar, Inc., Feltl and Company,
Inc., Sajan, Inc., Perkins Capital
Management, Inc., Richard C.
Perkins, Merrill A. McPeak, Benno G.
Sand, John C. Feltl, and Joseph P.
Sullivan,

        Plaintiffs,

    v.

Tiberius Capital II, LLC,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-2869 ADM/SRN

---

Geoffrey P. Jarpe, Esq., and Brent A. Lorentz, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, on behalf of Plaintiffs MathStar, Inc., Perkins Capital Management, Inc., Richard C. Perkins, Merrill A. McPeak, and Benno G. Sand.

Thomas E. Jamison, Esq., and Adam A. Gillette, Esq., Fruth Jamison & Elsass PLLC, Minneapolis, MN, on behalf of Plaintiff Sajan, Inc.

F. Chet Taylor, Esq., Taylor Law Office, PLC, Minneapolis, MN, on behalf of Plaintiffs Feltl and Company, John C. Feltl, and Joseph P. Sullivan.

Timothy D. Kelly, Esq., and Tracey L. Baubie, Esq., Kelly & Berens, P.A., Minneapolis, MN; Eric M. Fogel, Esq., Schuyler, Roche, & Crisham, P.C., Chicago, IL, on behalf of Defendant.

---

# I. INTRODUCTION

On February 9, 2010, the undersigned United States District Judge heard oral argument

on MathStar, Inc., ("MathStar"), Perkins Capital Management, Inc., Richard C. Perkins

("Perkins"), Merrill A. McPeak ("McPeak"), Benno G. Sand ("Sand") (collectively "MathStar

Plaintiffs"), Feltl and Company, Inc. ("F&C"), John C. Feltl, Joseph P. Sullivan, (collectively

"Feltl Plaintiffs") and Sajan, Inc.'s ("Sajan") (collectively "Plaintiffs")[1] Motions to Dismiss

Amended Counterclaim [Docket Nos. 16, 18, and 20]. For the reasons set forth below,

Plaintiffs' Motions are granted.

## II. BACKGROUND[2]

Tiberius Capital II, LLC ("Tiberius"), the Defendant in the instant case, is the

unsuccessful tender offeror in a contest for the control of a corporation. After Tiberius's tender

offer was defeated, it brought a counterclaim for damages and injunctive relief against the

management of the target corporation (MathStar), its investment advisor (F&C), and the

successful competitor (Sajan), alleging violations of federal securities laws and state law.

Anticipating Tiberius's claims, Plaintiffs brought suit seeking a declaratory judgment that

Tiberius's claims are meritless.

In 2005, MathStar, a Delaware corporation with its principal place of business in Oregon,

became a publicly-traded company through an initial public offering ("IPO"). Compl. [Docket

No. 1] ¶¶ 5, 16. F&C, a privately-held investment banking firm in Minnesota, underwrote the

IPO which raised capital for MathStar to develop and commercialize programmable computer

chips. Id. ¶¶ 6, 16; Am. Counterclaim [Docket No. 15] ¶ 3. In May, 2008, MathStar's

operations ceased. Am. Counterclaim ¶ 3. As of June 30, 2009, Mathstar had cash and cash

equivalents of $13.67 million and total assets of $14.65 million, total liabilities of $669,000, and

---

[1] Of Tiberius's eleven counterclaims, only Counts X and XI are brought against Sajan. Thus, references to "Plaintiffs" do not include Sajan unless relevant to Counts X and XI.

[2] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994). Thus, Defendant at this stage in the proceedings is by law entitled to all inferences in its favor.

an accumulated deficit of $142 million.  Id. ¶ 4.  F&C underwrote MathStar's IPO and served as placement agent on several rounds of private financing.  Many of MathStar's shareholders were (and are) F&C's clients.  Compl. ¶ 17.

Sajan is a privately-held Minnesota corporation with its principal place of business in Wisconsin that provides foreign language translation services.  Id. ¶ 7.  In 2006, Sajan retained F&C to serve as placement agent on a $2,000,000 private stock offering.  As a result of that offering, many of Sajan's shareholders were (and are) F&C's clients.  Id. ¶ 19.  In 2008, Sajan retained F&C to explore merger and acquisition possibilities.  Id. ¶ 20.  In July 2008, F&C, on behalf of Sajan, submitted a merger proposal to MathStar, which MathStar ultimately rejected. Id. ¶ 21.  In May 2009, MathStar became interested in a possible merger with Sajan; MathStar retained an investment banking firm to advise it on the proposed transaction, and Sajan continued to use F&C as its investment advisor.  Id. ¶ 22.

On approximately May 12, 2009, Tiberius acquired MathStar shares in the open market; its last purchase of MathStar stock was on May 14, 2009.  Am. Counterclaim ¶¶ 5, 6.  On approximately June 1, 2009, Tiberius launched a tender offer for 4,682,564 shares of MathStar common stock at $1.15 per share, conditioned on (1) MathStar's shareholders rejecting a shareholder resolution on liquidation scheduled for the 2009 Annual Meeting; (2) MathStar retaining a minimum of $13.75 million in cash or long-term marketable securities immediately prior to the expiration of the offer; and (3) no takeover defenses existing for MathStar immediately prior to the expiration of the offer.  Id. ¶ 7.

On June 4, 2009, MathStar filed with the Securities and Exchange Commission ("SEC") and distributed a proxy statement and notice of the 2009 annual meeting of shareholders,

originally to be held on June 29, 2009. Id. The purpose of the meeting was to elect MathStar's Board of Directors, ratify the appointment of an auditor, and conduct an advisory vote on a shareholder proposal requesting that MathStar's Board of Directors liquidate MathStar and distribute its cash to shareholders (the "Liquidation Proposal") as soon as possible. Id. ¶ 9. The record date for shareholders entitled to vote at the annual meeting was May 13, 2009. Id. On approximately June 17, 2009, MathStar filed with the SEC an amended notice, rescheduling the annual meeting from June 29, 2009, to July 10, 2009. Id. ¶ 11.

On July 1, 2009, Tiberius increased its tender offer to include all of MathStar's outstanding shares, extended the offer until July 15, 2009, and announced that 672,000 MathStar shares had been tendered to Tiberius. Id. ¶¶ 8, 21. On July 9, 2009, one day before the annual meeting, Tiberius increased its offer to $1.25 per share with an expiration date of July 20, 2009. Id.

At MathStar's annual meeting on July 10, 2009, Perkins, McPeak, Sand and Douglas Pihl ("Pihl"), the Chairman, President, Chief Executive Officer and Chief Financial Officer of MathStar, were re-elected as directors, and the Liquidation Proposal was defeated. Id. ¶¶ 12, 14. During the meeting, Pihl discussed the possibility of a merger and that same day, disclosed this information publicly in a filing with the SEC. Compl. ¶ 28(b). On approximately July 15, 2009, MathStar issued a press release announcing that it had entered into a non-binding letter of intent to merge with Sajan. See id. ¶ 17. On approximately that same date, MathStar disclosed to the SEC that Pihl had resigned because he felt the proposed merger was not in the best interests of MathStar's shareholders. Id. ¶¶ 13-14. On approximately July 20, 2009, MathStar issued a press release announcing that the exclusivity period for MathStar and Sajan to finalize a merger

agreement had been extended until August 24, 2009.  Id. ¶ 16.  On July 21, 2009, Tiberius

extended its offer to August 14, 2009 and announced that it had 1,625,000 shares already in its

depository.  Id. ¶¶ 8, 22.  On August 17, 2009, Tiberius increased its offer to $1.35 per share

until August 31, 2009.  Id.  On September 1, 2009, Tiberius increased its offer to $1.45 per share

until September 30, 2009.  Id.  On October 1, 2009, Tiberius withdrew its offer and, shortly

thereafter, sold all of its MathStar shares.  Id. ¶¶ 6, 8.

On October 8, 2009, Tiberius's counsel alleged to MathStar's counsel that there was

misconduct in the handling of the proposed Sajan merger and Tiberius's tender offer.  Tiberius

sent MathStar's counsel a draft class-action claim, purportedly to be filed in the United States

District Court for the Southern District of New York, alleging fraud, market manipulation,

violations of the Securities Exchange Act (the " Exchange Act") of 1934, breach of fiduciary

duty, and other wrongdoings.  Compl., Ex. 1.  In response, Plaintiffs filed this action in

Minnesota seeking a declaration that Tiberius's claims are without merit.  Compl.  Tiberius

answered and asserted its counterclaim. Am. Counterclaim.  Plaintiffs move to dismiss the

federal securities law claims and the state common law claims for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6) or for failure to allege fraud with sufficient particularity

under the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b).

### III.  DISCUSSION

**A.** **Procedural Fencing**

Tiberius first argues that Plaintiffs' motions should be denied and the Complaint for

declaratory relief should be dismissed sua sponte because it constitutes procedural fencing and is

an effort to deprive Tiberius of its choice of forum.  In support of this argument, Tiberius cites

several cases. However, the cases relied on by Tiberius seemingly involve plaintiffs who filed a declaratory judgment action and defendants who, in lieu of answering, filed a motion to transfer venue or simply filed an action in another court. Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P., Civ. No. H-07-637, 2007 WL 5186798 (S.D. Tex., Sept. 11, 2007) (granting the defendant's motion to transfer the plaintiff's declaratory judgment suit); Creative Compounds, LLC v. Sabinsa Corp., No. 1:04CV114CDP, 2004 WL 2601203, at *1 (E.D. Mo., Nov. 9, 2004) ( "[Plaintiff] did not respond to [Defendant] by the . . . deadline, and instead filed this declaratory judgment action . . .[T]hree days after learning of this declaratory judgment action, [Defendant] filed a complaint against [Plaintiff] in [another district] . . ."); Crown Cork & Seal Co., Inc. v. Borden, Inc., 779 F. Supp. 33, 34 (E.D. Pa., 1991) ("On May 13, 1991, before answering [Plaintiff's] complaint, Defendant sued Plaintiff in [another district] . . ."). The courts that denied plaintiffs declaratory relief did so in part because a separate action was pending in another district or because adjudication of the declaratory judgment action would not settle the entire controversy between the parties. In contrast to the cases cited by Tiberius, no motion to dismiss or transfer has been filed, nor has Tiberius filed a Complaint in another district. Rather, Tiberius has answered and asserted its counterclaims in this court. In addition, adjudication of Plaintiffs' motions to dismiss will settle the entire controversy between the parties. Accordingly, the Court proceeds to the substance of Plaintiffs' motions.

**B.      Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most

favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.[3] Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**C. Fraud Claims Under the Exchange Act**

**1. The PSLRA's Heightened Pleading Requirements**

Under the PSLRA, 15 U.S.C. § 78u-4(b), securities fraud actions are subject to heightened pleading requirements that embody the requirements of Federal Rule of Civil Procedure 9(b). See Kushner v. Beverly Enter., Inc., 317 F.3d 820, 826 (8th Cir. 2003); In re

---

[3] Although the facts alleged in the complaint are taken as true, the Private Securities Litigation Reform Act requires courts to "disregard catch-all or blanket assertions that do not live up to the particularity requirements of the statute." In re Amdocs Ltd. Sec. Litig., 390 F.3d 542, 547 (8th Cir. 2004).

Navarre Corp. Sec. Litig., 299 F.3d 735, 741-42 (8th Cir. 2002) (stating that plaintiff need only satisfy the PSLRA, which "supercedes reliance on 9(b) in securities fraud cases"). First, a plaintiff must plead with specificity each misrepresentation or omission and each statement alleged to have been misleading and the reasons why the statement was misleading. See 15 U.S.C. § 78u-4(b)(1). The circumstances of the alleged fraud must be particularly stated so as to include matters such as the time, place, and contents of the representations, the identity of the person who made the statement, and what he or she obtained or gave up by making the statement-in other words, the "'who, what, when, where, and how.'" K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 890 (8th Cir. 2002) (quoting Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-50 (8th Cir. 1997)). Conclusory allegations do not satisfy the pleading requirements of the PSLRA. Parnes, 122 F.3d at 549; In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000). In addition, with respect to each misrepresentation and omission alleged, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

**2. Standing to Sue for Damages**

**a. Counts IV and VII - Section 14(e) and Rule 14e-3, Section 14(a) and Section 14(d)**

Section 14(e), Rule 14(e)-3, Section 14(a) and Section 14(d) prohibit fraud and deceptive conduct in connection with various aspects of securities transactions. Tiberius's standing to seek relief on its amended counterclaims is necessarily the first inquiry, as standing is "a jurisdictional prerequisite to a federal court's deliberations." Hodel v. Irving, 481 U.S. 704, 711 (1987). In its original counterclaim, Tiberius sought monetary damages for Plaintiffs' alleged securities laws

violations. Answer & Counterclaim [Docket No. 2] ¶¶ 75, 87, 99, 111, 124, 134 (stating that Tiberius suffered damages when its tender offer was defeated due to Plaintiffs' unlawful conduct); "Wherefore" clause 2 ("Award damages on its Counterclaim in an amount to be proved at trial[.]").

In its amended counterclaim, Tiberius appears to have abandoned its claim for monetary damages on the securities laws violations and instead seeks injunctive and declaratory relief. Am. Counterclaim ¶¶ 76, 88, 100, 112, 125, 135 (stating that Tiberius has a right to an Order declaring that the various Plaintiffs violated sections of the Exchange Act); "Wherefore" clause 2 ("Award damages on its Amended Counterclaim for the state law causes of action in an amount to be proved at trial[.]"); "Wherefore" clause 3 ("Issue injunctive relief and declaratory relief that is equitable and just for the violations of the 1934 Exchange Act.").

Although not expressly conceding it has no standing to seek monetary recompense for the securities claims, the differences between the original counterclaim and the amended counterclaim evince Tiberius's recognition of its standing deficiency.

Tiberius alleges the MathStar and Feltl Plaintiffs violated Rule 14(e)-3 promulgated pursuant to section 14(e). Section 14(e) prohibits the disclosure of material, nonpublic information in the context of a tender offer, and provides, in relevant part:

> (e) It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holder in opposition to or in favor of any such offer, request or invitation.

15 U.S.C. § 78n(e).

Similarly, Rule 14(e)-3 provides in relevant part:

> (a) If any person has taken a substantial step or steps to commence, or has commenced a tender offer (the "offering person"), it shall constitute a fraudulent, deceptive, or manipulative act or practice within the meaning of section 14(e) of the [Act] for any other person who is in possession of material information relating to such tender offer which information he knows or has reason to know is nonpublic and which he knows or has reason to know has been acquired directly or indirectly from:
>
> (1) The offering person,
>
> (2) The issuer of securities sought or to be sought by such tender offer, or
>
> (3) Any officer, director, partner, or employee or any other person acting on behalf of the offering person or such issuer,
>
> to purchase or sell or cause to be purchased or sold any of such securities or any securities convertible into or exchangeable for any such securities or any option or right to obtain or to dispose of any of the foregoing securities, unless within a reasonable time prior to any purchase or sale such information and its sources are publicly disclosed by press release or otherwise.

17 C.F.R. § 240.14e-3.

Section 14(e) was enacted as part of the Williams Act, and imposes upon tender offerors disclosure and reporting requirements. In Piper v. Chris-Craft Industries, Inc., 430 U.S. 1 (1977), the Supreme Court held that a tender offeror, suing in its capacity as a takeover bidder does not have standing to sue for damages under section 14(e). The Supreme Court explained that the sole purpose of the Williams Act was to provide protection for investors, and that tender offerors do not have standing to allege violations of section 14(e) of the Act as they are not among the persons the statute was designed to protect. Id. at 35.

Section 14(e) of the Exchange Act creates certain disclosure requirements while Section

14(a) of the Exchange Act aims "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." J.I. Case Co., v. Borak, 377 U.S. 426, 431 (1964). Tiberius alleges Plaintiffs violated Section 14(d) by failing to make proper disclosures and Section 14(a) by making misleading statements or omissions in proxy solicitations. Courts have applied the same rationale set forth by the Supreme Court in Piper to determine that a defeated tender offeror cannot maintain damages claims predicated on alleged violations of Section 14(d) and 14(a). Kalmanovitz v. G. Heileman Brewing Co., Inc., 595 F.Supp. 1385, 1393 (D. Del. 1984), aff'd 769 F.2d 152 (3d Cir. 1985); Luptak v. Central Cartage Co., [1981 Transfer Binder] Fed. Sec.L. Rep. (CCH) ¶ 98,034 at 91,352-54 (E.D. Mich. 1979). Thus, Tiberius has no standing to seek relief as alleged in Counts IV and VII.

### b. Counts V and VI - Section 10(b) and Rule 10b-5

In Counts V and VI, Tiberius alleges fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 2401.10b-5.

A cause of action under section 10(b) applies only to misrepresentations or omissions made "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). Thus, to state a claim thereunder, an individual must allege that he was an actual purchaser or seller of securities. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 749 (1975); Caiola v. Citibank, N.A., 295 F.3d 312, 322 (2d Cir. 2002) ("Under the first element-fraud committed 'in connection with the purchase or sale of any security'-standing is limited to actual purchasers or sellers of securities." Among the potential class of people barred by this rule are those injured by "decisions to hold or refrain from trading." First Equity Corp. of Florida v. Standard & Poor's Corp., 869 F.2d 175, 180 n.2 (2d Cir. 1989).

Tiberius purchased MathStar stock between May 12 and May 14, 2009, and sold all of its MathStar securities in October 2009. Tiberius claims that Plaintiffs concealed its relationship with Sajan in the proxy statement. MathStar filed with the SEC and distributed a proxy statement on June 4, 2009, *after* Tiberius had already made its May stock purchases. Based on the plain language of section 10(b) and well-settled case law, Tiberius's May purchases could not give rise to a Rule 10b-5 cause of action because that purchase occurred before the distribution of the allegedly inadequate proxy statement, and therefore could not be in connection with the purchase or sale of a security. As a matter of law, "conduct actionable under Rule 10b-5 must occur before investors purchase the securities." Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1487 (9th Cir. 1991); see also Roberts v. Peat, Marwick, Mitchell & Co., 857 F.2d 646, 651 (9th Cir. 1988).

Tiberius further alleges that Plaintiffs failed to disclose the existence of a "creeping tender offer" and material information regarding Plaintiffs' intent in buying back MathStar

shares.  Am Counterclaim ¶¶ 94-96.  However, even if these allegations are true, Tiberius lacks

standing to sue for information that should or should not have been disclosed to MathStar's

shareholders.  See Blue Chip Stamps, 421 U.S. at 749.

Finally, Tiberius alleges that because of Plaintiffs' material omissions, namely,

concealing the Sajan merger plan from the MathStar shareholders prior to the vote on the

Liquidation Proposal, it was induced to buy and sell MathStar shares and launch its tender offer.

Am. Counterclaim ¶ 98.  Rule 10b-5 prohibits "*only* misleading and untrue statements, not

statements that are incomplete."  Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th

Cir. 2002).   "To be actionable under the securities laws, an omission must be misleading; in

other words it must affirmatively create an impression of a state of affairs that differs in a

material way from the one that actually exists."  Id. at 1006.  Thus, in order to survive a motion

to dismiss under the rigorous pleading requirements, the claim "must specify the reason or

reasons why the statements made by [the defendant] were misleading or untrue, not simply why

the statements were incomplete."  Id.  In Brody, the defendant's board of directors announced a

plan to buy back on the open market up to $25 million in company stock.  Brody, 280 F.3d at

998-99.  A third party later submitted a written offer to the defendant to purchase the company at

a higher price per share.  Id. at 999.  Soon after, the defendant issued a press release describing

the progress of the stock repurchase program but failed to mention the third party's offer or any

other company's interest in purchasing.  Id.  The plaintiffs argued that the defendant misled

investors by not disclosing the third party's offer, but the Ninth Circuit held that plaintiffs were

not misled because the defendant never conveyed that a merger or acquisition would not occur.

Id. at 1006-07.

Similarly, Tiberius has merely alleged that Plaintiffs' statements were incomplete, not that anything said was misleading or untrue. Although in May, at the time Tiberius purchased MathStar's shares, Plaintiffs did not disclose the status of private merger discussions, Plaintiffs did not mislead Tiberius by, for example, indicating that a merger or acquisition would not occur. If Plaintiffs had affirmatively intimated that no merger was imminent, those statements may well have been misleading. But Plaintiffs did not do so. Thus, Tiberius has not and cannot allege that Plaintiffs' failure to disclose Sajan's potential interest in MathStar constitutes a cause of action under Rule 10b-5. For these reasons, Counts V and VI are dismissed.

### 3. Other Claims

#### a. Count III - Section 13(d)

In Count III, Tiberius alleges that Plaintiffs violated section 13(d) of the Exchange Act by failing to file required disclosure reports. Section 13(d) requires any "group" holding more than five percent of the outstanding stock of a company to file disclosure reports with the SEC setting forth the reasons for the group's accumulation of a five percent interest and stating whether the group plans to attempt a takeover. 15 U.S.C.A. s 78m(d). Courts have uniformly held that no private cause of action exists for monetary damages under section 13(d). Kalmanovitz, 769 F.2d at 160; Rubin v. Posner, 701 F.Supp. 1041, 1051 (D. Del. 1988); Sanders v. Thrall Car. Mfg. Co., 582 F.Supp. 945, 960-61 (S,D.N.Y. 1983); Rosenbaum v. Klein, 547 F.Supp. 586, 591 (E.D. Pa., 1982).

### b. Count VIII - Section 20(a)

Tiberius asserts in Count VIII that Plaintiffs are liable under the control theory doctrine of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Tiberius's Section 20 claim is derivative of its other claims under the Exchange Act, and without an underlying violation of the Exchange Act or any rule or regulation promulgated under its authority, Tiberius cannot state a claim under Section 20. <u>See</u> <u>Devries v. Prudential-Bache Securities, Inc.</u>, 805 F.2d 326, 329 (8th Cir.1986). Accordingly, the dismissal of Tiberius's other claims under the Exchange Act is fatal to its Section 20 claim.

### 4. Equitable Relief

Tiberius argues that tender offerors have standing to seek equitable relief but fails to specify the nature of the equitable relief it seeks. A review of the amended counterclaim shows that Tiberius seeks an order declaring that Plaintiffs violated federal securities laws and issuing injunctive and declaratory relief.

To the extent that Tiberius's claims are grounded on allegations of fraud and misleading disclosures respecting the proposed merger between MathStar and Sajan, Tiberius's claims are moot because it has withdrawn its tender offer and MathStar's merger with Sajan has occurred. Therefore, Tiberius's request for an injunction is moot. <u>See</u> <u>Sanders</u>, 582 F.Supp. at 955-56 (stating that a request for an injunction related to the election of a board of directors became moot when the directors' term expired). Thus, injunctive relief is not appropriate. <u>Kalmanovitz</u>, 595 F.Supp. at 1390 ("Courts will not consider granting injunctions when the circumstances are such that the injunction cannot be enforced by the court") (quotation omitted).

No authority has been cited which allows a private litigant to obtain declaratory relief for

securities laws violations in the absence of a damages award or an injunction. Insofar as Tiberius seeks a declaration that Plaintiffs committed securities fraud, such an order would be futile resulting in a judicial declaration with no practical effect. See Browning Debenture Holders' Committee v. DASA Corp., 524 F.2d 811, 814 (2d Cir. 1975) (stating that where an alleged violation of federal securities laws has already occurred, a declaratory judgment serves no useful purpose). Accordingly, the Court declines to fashion such relief.

## D. State Law Fraud Claims - Counts I and II

The MathStar and Feltl Plaintiffs move to dismiss Counts I and II pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and for failure to plead fraud with sufficient particularity as required by Rule 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To be sufficiently particular, Tiberius must provide the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation." Parnes, 122 F.3d at 549. "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995).

To establish a cause of action for fraud under Minnesota law, a plaintiff must show (1) a false representation or omission of a material fact, (2) that the defendant knew the representation or omission was to be false, (3) that the defendant intended the plaintiff to act on the representation or omission, (4) the plaintiff was justified in relying on the representation or omission, and (5) the plaintiff suffered damages. Bruzer v. Danek Medical, Inc., Civ. No. 3-95-971, 1998 WL 1048225, at *6 (D. Minn. 1998); see also Davis v. Re-Trac Mfg. Corp., 276

Minn. 116, 149 N.W.2d 37, 38-39 (1967).

Plaintiffs argue that Tiberius's fraud based claims are predicated on conclusory allegations of fraud, misrepresentation, and omissions that have not been pleaded with sufficient particularity to satisfy Rule 9(b). Specifically, Plaintiffs argue that Tiberius has failed to plead what representations Plaintiffs made to Tiberius, what action Tiberius took in reliance on those representations, or any facts to establish what injury Tiberius suffered as a result of the representations.

Tiberius alleges that the MathStar Plaintiffs failed to disclose that MathStar was engaged in merger discussions with Sajan. Am. Counterclaim ¶¶ 59-60. Plaintiffs assert that MathStar did disclose that it was investigating a possible merger with a private company. Compl. ¶ 28(b). Assuming, as the Court must, that the facts of Tiberius's counterclaim are true, Tiberius's allegation regarding MathStar's decision to not disclose the potential Sajan deal is not an actionable omission.

Furthermore, Tiberius's Amended Counterclaim is replete with allegations that the "MathStar parties" and "Feltl Parties" engaged in fraudulent conduct. For instance, Tiberius alleges that

> The Feltl Parties also had inside and confidential information regarding Sajan and its business and financial prospects, and communicated that information to various and selected MathStar shareholders, and as such, the Feltl Parties traded on material inside information, while at the same time represented the interests of Sajan as its investment banker, all without proper disclosure.

Am. Counterclaim ¶ 45. This allegation lacks the requisite particularity because Tiberius has not identified what information Feltl had, which MathStar shareholders the information was

communicated to, or when or where this conduct occurred. In the absence of such allegations, Plaintiffs (and the Court) are left to speculate what "inside and confidential information" the Feltl Plaintiffs had and whether their communication of that information to certain unspecified MathStar shareholders was unlawful.

In another allegation, Tiberius claims that the Feltl Plaintiffs disclosed "confidential material information . . . to various MathStar shareholders." Id. Again, Tiberius does not provide any specifics of what information was conveyed, the context of the information conveyed, or who made the allegedly misleading statements.

Tiberius makes several allegations of illegal conduct by the Feltl Plaintiffs including market manipulation, "hyping," and "ramping." Am. Counterclaim ¶¶ 47-49. However, Tiberius does not provide the factual basis for asserting the Feltl Plaintiffs engaged in such conduct. Tiberius does not provide enough corroborating details to convince the Court that the Feltl Plaintiffs undertook unlawful methods and that the change in the price of MathStar stock was not due to legitimate activity.

The Amended Counterclaim lumps together accusations at the MathStar Plaintiffs and the Feltl Plaintiffs without specifically identifying who said what to whom, and when. Also fatal to its claim, Tiberius has not made a sufficient showing of what representations or omissions Plaintiffs made to Tiberius, knowledge of their falsity at the time they were made, or intent to induce Tiberius's reliance. The challenged conduct in the Amended Counterclaim are unattributed, conclusory allegations and fail to satisfy the heightened pleading requirements of Rule 9(b) and the essential elements of fraud and, therefore, Counts I and II are dismissed.

### E. Breach of Fiduciary Duty - Count IX

Tiberius alleges that Plaintiffs Perkins, McPeak, and Sand breached their fiduciary duty of care in Count IX of the Amended Counterclaim. Plaintiffs Perkins, McPeak, and Sand argue that Tiberius's claim for breach of fiduciary duty should be dismissed because it is derivative. Tiberius responds that its claim is direct rather than derivative because it experienced a special injury that is "separate and distinct from other shareholders generally." Tiberius's Consolidated Resp. to Pls'. Mots. to Dis. the Am. Counterclaim [Docket No. 43] at 50.

Fiduciary duties of directors and shareholders are governed by the laws of the state of incorporation. Dunning v. Bush, 536 F.3d 879, 886 (8th Cir. 2008). Thus, since MathStar is a Delaware corporation, Delaware law applies to Tiberius's breach of fiduciary duty claim. As Plaintiffs Perkins, McPeak, and Sand argue, the concept of "special injury" was abandoned in Delaware by the court in Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031 (Del. 2004). As the Tooley court stated, in determining whether a stockholder's claim is derivative or direct, the proper inquiry is "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" Tooley, 845 A.2d at 1033. With respect to the first prong, the critical question is: "'Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?'" Id. at 1036 (quoting Agostino v. Hicks, 845 A.2d 1110, 1122 (Del. Ch. 2004)).

The discernible injury allegedly suffered by Tiberius is that Plaintiffs failed to properly consider and recommend Tiberius's tender offer to MathStar's shareholders and failed to

disclose the Sajan merger proposal which was on the horizon. These series of events would have harmed MathStar because MathStar may have been precluded from entering into a transaction that would have maximized its return. "A breach of fiduciary duty that works to preclude or undermine the likelihood of an alternative, value-maximizing transaction is treated as a derivative claim because the company suffers the harm . . ." In re NYMEX Shareholder Litigation, C.A. Nos. 3621-VCN, 3835-VCN, 2009 WL 3206051, at *9 (Del. Ch. Sept. 30, 2009). Tiberius's breach of fiduciary duty claim fits precisely this description. Therefore, Count IX is dismissed because it is a derivative action and must be brought as one.

## F. Interference with Prospective Advantage - Count X

Plaintiffs and Sajan seek dismissal on Tiberius's counterclaim of interference with prospective advantage as alleged in Count X. To establish a claim of tortious interference with a prospective business relationship, a plaintiff must prove the defendant intentionally committed a wrongful act which improperly interfered with the prospective relationship. Hunt v. Univ. of Minn., 465 N.W.2d 88, 95 (Minn. Ct. App. 1991) (citing United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 633 (Minn. 1982)).

As discussed in the fraud section above, Tiberius has failed to sufficiently allege that Plaintiffs and Sajan engaged in any wrongful acts. Tiberius merely states that "the Plaintiffs solicited MathStar shareholders to buy their shares away from Tiberius's tender offer at prices higher than prevailing market prices and through selective disclosure of non-public information." Am. Counterclaim ¶ 147. These conclusory allegations fail to explain which Plaintiff engaged in the allegedly wrongful activity, when they did so, whom the Plaintiffs and Sajan solicited, and what information was not disclosed. Accordingly, Count X is dismissed because Tiberius has

failed to allege a cognizable interference with prospective advantage claim.

**G.  Civil Conspiracy - Count XI**

Finally, the Court concludes that Tiberius's remaining civil conspiracy claim, Count XI, must also be dismissed.  "[A] civil conspiracy claim is merely a vehicle for asserting vicarious or joint and several liability," and, thus, such a "claim" is dependent upon a valid underlying tort claim.  Sick, Inc. v. Motion Control Corp., Civ. No. 01-1496, 2003 WL 21448864, at *10 (D. Minn. June 19, 2003) (citations omitted); accord Stephenson v. Deutsche Bank AG, 282 F.Supp.2d 1032, 1070 (D. Minn. 2003).  Because the underlying tort claims are subject to dismissal, the conspiracy claim must also be dismissed.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motions to Dismiss [Docket Nos. 16, 18, and 20] are **GRANTED** and Tiberius's counterclaims are **DISMISSED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 26, 2010.